IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IVAN PADÍN AND THE CONJUGAL PARTNERSHIP PROPERTY COMPRISED BY HIM AND HIS WIFE<br>PLAINTIFFS<br><br>VS.<br><br>SEARS ROEBUCK OF PUERTO RICO, INC.; SEARS HOLDINGS CORPORATION RAMON JARA AND THE CONJUGAL PARTNERSHIP PROPERTY COMPRISED BY HIM AND HIS WIFE<br>DEFENDANTS | CIVIL NO. 15-<br><br><br><br>JURY BY TRIAL DEMANDED |

**COMPLAINT**

**TO THE HONARABLE COURT:**

NOW COMES the plaintiff, Ivan Padín and the Conjugal Partnership Property comprised by him and his wife, through the undersigned attorney, and respectfully alleges and prays as follows:

**I. NATURE OF ACTION**

1.1. This is an action for damages and declaratory and equitable relief brought by a District Loss Prevention Manager and Safety Specialist for Sears Roebuck of Puerto Rico, Inc. a company dedicated to the import and sales of goods, among other activities. The plaintiff, Ivan Padín (Mr. Padín), asserts that he has been subject to discrimination and humiliation. The defendant (Sears) discriminated against the plaintiff because he is an older employee from Puerto Rico and because he is a U.S. Veteran.

1.2. Mr. Padín complains herein of the actions of the management of Sears Roebuck, Inc. particularly those of Mr. Ramon Jara, a native of Mexico, and worked as In Home Supervisor for several years and thus Plaintiff's direct supervisor.

1.3. Plaintiff invokes both federal and Puerto Rico Law. Mr. Padín requests compensation for his sufferings, as well as back pay, a doubling of his damages pursuant to Puerto Rico Law, Punitive damages, attorneys' fees, applicable interest and any other relief afforded by the law.

## II. JURISDICTION AND VENUE

2.1 The jurisdiction of this court is invoked pursuant to 28 U.S.C § 1331, as this claim arises under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §et seq, and 42 U.S.C. which prohibits national origin discrimination in the workplace retaliation for opposing and complaining about discriminatory practices, as well as The Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq, which prohibits age discrimination in employment and retaliation. **Titles I and V of the Americans with Disabilities Act of 1990 (ADA)** 42 U.S.C. §12101 et seq, which prohibits discrimination against employees with physical disabilities and prohibits discrimination against veterans with disabilities.

2.2 There is supplemental jurisdiction to hear the claims arising under the laws of Puerto Rico, which arise under the same nucleus of operative facts, and supplemental jurisdiction to hear claims against the individual defendants, pursuant to 28 U.S.C. §1367.

2.3 This is the proper venue to bring this action since the facts relating to the cause of action arose in this district.

## III. PARTIES

3.1     Plaintiff Ivan Padín is a 41-year old resident of Hatillo, Puerto Rico who had worked at Sears Roebuck, Inc. for seven years. Mr. Padín obtained a BA degree in Education with minor in Science and Math from the University of Puerto Rico Arecibo campus in 1991.

3.2     Sears Roebuck Puerto Rico, Inc. is a corporation organized in the United States with operations in Puerto Rico involved in distribution and sales of goods with offices located at #9410 Ave. Los Romero 2d Floor K-Mart, San Juan, Puerto Rico 00926 and postal address P.O. Box 3670302 San Juan, Puerto Rico 00936-7302. It will be referred to herein as "Sears" or "the Company". The company is engaged in international commerce. The designated resident agent of the corporation is Mr. Marino Vidal #9410 Ave. Los Romero 2d Floor K-Mart, San Juan, Puerto Rico 00926.

3.3     Sears Holdings Corporation is a corporation organized under the laws of the United States of America with main offices located at 3333 Beverly Road Hoffman Estates, Illiniois 60179.

3.4 The company had more than 25,000 employees worldwide more than 200 employees in at least 20 weeks in the current or preceding calendar year, and is engaged in interstate commerce.

3.5     Ramon Jara is an individual, resident of Puerto Rico, and employee, agent or official of Sears Holdings Corporation and in 2012 was assigned as plaintiff's direct supervisor.

3.6     At all times pertinent to this complaint Mr. Jara has acted as an agent of the Sears Holdings and Sears Roebuck Puerto Rico.

## IV. STATEMENT OF FACTS

4.1     Plaintiff Ivan Padín started working for Sears Roebuck, Inc. in 2007, beginning as District Loss Prevention Manager and in 2012 he was assigned the position of Safety. He was the only Loss Prevention manager with two positions of responsibility in the company (loss prevention and safety officer).

4.2     On October 18, 2012, Jim Perillo (National Loss Prevention manager), Jill Roadman (DVP), Dan Hornickel (Regional Specialty Loss Prevention manager) and Joe Nowicki (Regional Logistic Loss Prevention manager) visited Puerto Rico. During this visit, plaintiff gave a presentation about Puerto Rico's region state of the business for 2012.

4.3     During the "over and short" section of the presentation, plaintiff explained to the visitors that numbers shown a perceived shortage in the Sears's reports.

4.4     Plaintiff explained to all present about delays in deposit transactions being caused by the Puerto Rico banking system treated as an overseas location and delay this causes in transactions. This action makes a false misconception of money missing from the registers when the reality is that the money at the local Puerto Rico bank (Banco Popular) and that this problem does not happen in other U.S. branches because they have a different banking system to make deposits and all these transactions can be seen during the next business day.

4.5     Banco Popular of Puerto Rico has money transfers that do not occur every day. This process was unknown to the visiting team from the mainland.

4.6     Jim Perillo, National Loss Prevention Manager took over to investigate and contacted Ramon Jara In Home Director in training about the situation.

4

4.7     Without any formal introduction, Mr. Jara contacted plaintiff via phone to his assigned company mobile phone, asking the following; "where is my money", "who do we need to interview, Ivan "; "if you can't do it right, you need to find another job".

4.8     In 2012 end of the year review was discussed with Mr. Padín on mid April 2013. The score given by Mr. Jara was 2.8 out of 5. Mr. Ramon Jara's comments were; "I have seen some improvements during the last couples of month". Mr. Padín wrote a note in the end of the year review because he did not agree with Jara's rating.

4.9     On the safety section of the review, Mr. Padín finished first in the nation and was given a total score of 4 instead of 5. Mr. Jara's reason "You never told me how you did it" Mr. Padín told Mr. Jara that he should be measured him by business results during the entire year and not in how Mr. Padín runs his safety program.

4.10    Mr. Padín wrote on his review that he did not agree with his final review rating because he rated Mr. Padín for the entire 2012 even though, Mr. Jara only worked as Mr. Padín's reporting official for only four months of the entire 12 month period. All Mr. Padín's peers received their bonuses except him. Thus, discriminating against plaintiff.

4.11    At the beginning of January 2013, Mr. Ramon Jara increased plaintiffs' goal to terminate associates for 2013 from 5 to 9 internal cases knowing that total case number for 2012 was not reached. Mr. Padín was measured by how many people he terminated. Mr. Padín's metrics were aligned with my USA peers, knowing that Puerto Rico's termination process is different than USA.

4.12    Puerto Rico is a "Right to Work" jurisdiction as oppose to most US states which are "employment at will" jurisdictions. Mr. Padín explained this to Mr. Jara and Mr. Jim Perillo by phone and email.

4.13    Mr. Jara came to Puerto Rico for a visit exercising his functions as "In Home" Director, he attended to a Sears Loss Prevention Town hall meeting at Corporate Offices in Caguas in which all loss prevention managers around the Island participated and Jara was underwhelmed with the different frustrated situations to terminate employees.

4.14    Mr. Padín also explained several times to Mr. Jara that Sears Puerto Rico has never had 9 internal terminated cases in one year.

4.15    Mr. Padín explained to Mr. Jara that these disciplinary or ethics violation memos lead to terminations in most US jurisdictions but not in PR. This is the reason why Mr. Padín cannot be measured equally as his peers in mainland-USA because differences in labor laws. PR is a different jurisdiction than other mainland-USA in this termination process.

4.16    Mr. Padín previous supervisors understood the differences and peculiarities of PR and they were discussed during my end of the year review without difficulty or problem. However, this was not the case with Mr. Jara.

4.16    Plaintiff always had between 2 and 3 internal cases under Mr. Ramon Jara's supervision. His stores were reduced to 2 out of 4 due to closure of operations.  His internal cases remained the same as a 5, although the store number was reduced by 50%.  Mr. Jara chose not lowered his goals accordingly.

4.17    His peers in USA had between 35-300 stores and more than 2,000 employees.

4.18    Another situation that Mr. Padín encountered with Mr. Jara was the issue of the security cameras for the Puerto Rico units.  Mr. Jara eliminated the security guards at the Guaynabo and Mayaguez locations to save money and instead decided to install a camera system. He wanted to install cameras in order to save money to the district. The process of camera installation is significantly different than in the mainland-USA.

4.19     In mainland-USA, a request is made by the unit manager through the Sears break fix program. This is a Sears program in which they managed all related issues or budgets for cameras in stores with the difference that in Puerto Rico is not part of this program. Mr. Ramon Jara knew that Puerto Rico was not part of the break fix program. Mr. Padín did not have a provided budget or funding for this and Mr. Padín needed to seek approval from other sources. However, during this approval process, Mr. Jara continued sending emails asking to finish this process.

4.20     During plaintiffs 2013 midyear review, Mr. Jara's commented the following; "he has seen some improvements but still not where you need to be, communication and process execution continues to be an opportunity. Ivan, I have asked you several times ensure you attend all scheduled conference calls. Unfortunately, you still continue to miss conference calls without any notice."

4.21     Mr. Padín missed some conference calls due to VA medical appointments since he is 50% American disable veteran. Mr. Padín communicated all medical appointments to his local HR manager giving her all Veterans Affairs documentation according to the company's local rules.

4.22     Mr. Padín's Sears General Sales Manager PR, Debbie Maestre knew about these appointments as well as his local Sears HR manager Lysette Pinero. They allowed Mr. Padín to accommodate his workday schedule to assist appointments at the hospital.

4.23     HR sent emails to district staff about Mr. Padín's medical appointments and Mr. Padín copied "cc" some emails to Mr. Jara since 2012.

### Harassing E-mails

4.24   Mr. Ramon Jara sent emails to Mr. Padín after hours expecting him to answer them on timely manner example of these are:

1.   Tuesday-Nov 6, 2012 email sent from Mr. Jara at 6:15pm. - This was Election Day in PR.

2.   Wednesday-Jan 2, 2013 email sent from Mr. Jara at 4:30pm to have bi weekly status calls with the following topics: shortage control, kpi completes, shrink results, internal cases close or open, safety issues, WC incidents. – Mr. Padín was on scheduled and posted vacation.

3.   Thursday-Feb 7, 2013 email sent from Mr. Jara at 7:10pm (did not included Mr. Padín in the email) and sent Mr. Padín a forward at 8:51pm of the same day.

4.   Friday- Feb 8, 2013 email sent from Mr. Jara at 6:03pm requesting an action plan. He waited until the end of the day to send a reminder.

5.   Friday-Feb 15, 2013 email sent from Mr. Jara at 3:55pm in which Mr. Padín declined conference call for Monday because the topic was Philadelphia KPI in which Mr. Padín answered to Mr. Jara "this is not part of my district and I had never visited that unit and for that reason I have nothing to mention about it and this was why I declined." Mr. Padín sent this communication in advance but Mr. Jara's final word was that Mr. Padín needs to be in the call and so Mr. Padín was in the call.

6.   Monday-March 11, 2013 email sent from Jara at 8:14pm PDT- requesting who is Mr. Padín current mentor and title due next day at 0900 PDT. ---It was 11 pm PR time.

7. Tuesday-March 12, 2013 email sent from Mr. Jara at 7:23pm –"Ivan, you missed this deadline. Can't be missing deadlines. I needed this information this morning. It would have taking you two minutes to reply. Not good".—Why you did not called me?

8. Tuesday-March 19, 2013 email sent from Mr. Jara at 5:06pm- asked Jeff Harris (Corporate Investigator) to give Mr. Padín a crash course in Aspects. Mr. Padín already knew how to use Aspects. The problem was Mr. Padín's units were not included or listed in Aspects.

9. Wednesday-March 20, 2013 email sent from Mr. Jara to the team at 7:43pm and did not include Mr. Padín but mentioned that he found two KPI completes. Matt and Ivan.

10. Thursday-March 21, 2013 email sent from Mr. Jara at 11:45am and did not include Mr. Padín until same day at 2:48pm.

11. Monday-March 25-27, 2013 email sent from Mr. Jara at 2:02pm requesting to attend town hall meeting on April 2, 2013. Mr. Padín answered "On vacation". Mr. Jara replied to Mr. Padín as "Ivan did you send me your vacation request?" Mr. Padín sent him a picture of his master vacation plan since his outlook email was down and Jara replied "Ivan, send me when you requested the days off" – That information was sent to Mr. Jara at the beginning of the January 2013 plus Sears Parts and Service HR office Guaynabo also has this information. Mr. Jara never called HR manager in PR to verify information. No other manager Area Loss Prevention Manager had that problem with Mr. Jara except Mr. Padín.

9

(Note that some emails were affected by the daylight saving time hour). Harassment and National Origin Discrimination.

12. Tuesday-March 28, 2013 email was sent from Mr. Jara requesting Mr. Padín once again to discuss bi weekly status call. Mr. Padín already accepted on Jan 2, 2013 and was already set on IPAD schedule. Mr. Jara continued with his harassment.

4.25 On October 22, 2013, Jara decided to put Mr. Padín in a performance improvement plan until Jan 22, 2014 because Mr. Padín's metrics were below 100%. (Internals terminations and Variable Insurance claims were low in my metrics). Two other teammates who also had lower score metrics and no performance improvement plan was set for them.

4.26 Mr. Jara also added in the performance improvement plan missing conference calls and for not being actively participating on conference calls and not answering emails. Lack of follow up communication (verbal and written). Missed several deadlines.

4.27 Mr. Jara mentioned specific samples as: Did not attend midyear review process 8/30/2013 had to re schedule. During this date, Mr. Padín had a personal holiday scheduled since Jan 2013 and it was in the master vacation plan given to Mr. Jara and local HR manager office.

4.28 Mr. Padín also found that two of his peers had metrics below 100% and did not get a personal improvement plan. They never were called by Ramon Jara or Jim Perillo.

4.29 On Nov 25, 2013- Mr. Jara and Mr. Jim Perillo called Mr. Padín to follow up on the performance improvement plan. At that time, Mr. Jara and Mr. Jim Perillo explained and blamed Mr. Padín for been late 5 minutes for a past conference call. The call mentioned by them was at 4pm EST, 5pm PR time and closing store hours. Mr. Jara and Mr. Perillo tried to make a big issue in front of the District General Sales Manager Debbie Maestre, Amparo Ventura

Territorial HR Manager and Brenda Thurn, Area Manager East Regional manager that they also were invited to the call by Mr. Jara.

4.30    After the call, Mr. Padín sent a letter to Mrs. Debbie Maestre DSGM and local HR manager Mrs. Lysette Pinero to let them know about Mr. Jara's unfair treatment during the call.

4.31    On Nov 26, 2013- Mr. Padín sent an email to Amparo Ventura Territorial HR Manager and expressed feelings of employment's termination.

4.32    On Jan. 2014- Mr. Ramon Jara, Mr. Jim Perillo, Mrs. Debbie Maestre, Mrs. Amparo Ventura, Mrs. Brenda Thurn were present to discuss second performance improvement plan for Mr. Padín. Mr. Jara's comment: "Ivan, you have made a 95% improvement but that was not enough, I want a 100%.

4.33    Mr. Ramon Jara recommended to Mrs. Brenda Thurn and Mrs. Debbie Maestre to hire a new person for safety and remove Mr. Padín from safety program. Mr. Padín finished first in Safety for the previous 2012 and 2013 in the entire Nation.

4.34    At the end of Nov 2013. Mr. Ramon Jara was not longer Mr. Padín's reporting official and moved to another Sears division.

4.35    Mr. Padín received and email from Mr. Jara in February 2014 requesting his 2013 end of the year review. Mr. Jara never discussed end of the year review with Mr. Padín prior termination. Mr. Padín's peers had their end of the year performance review discussed.

4.36    Mr. Padín received his annual bonus on April 15, 2014 and a week later April 23, 2014 Mr. Padín was terminated from his employment with Sears by Mr. Jara due to "productivity".

4.37    Mr. Ramon Jara replaced Mr. Padín for another Area Loss Prevention Manager of the Florida region Steve Starner who is younger than Mr. Padín. He now comes once per year to Puerto Rico and performs Mr. Padín duties.

4.38    Mr. Padín sent letters to his Territorial HR Manager Amparo Ventura about entire situation with Mr. Ramon Jara including to be in his end of the year review but no action from them. Mr. Padín also sent email to Sears District General Sales manager Debbie Maestre and local HR manager Lysette Pinero about Mr. Jara's action and his intentions of terminating Mr. Padín in advance but neither of them help through the "open door policy". Constructive Discharge/ Forced to resign discrimination.

## DAMAGES

5.1    As a result of the actions and omissions described herein, plaintiff has suffered a concrete loss of income, estimated to be in the order of $100,000.00 to date and expected to increase in the future.

5.2    Plaintiff experienced extreme stress on the job, as he dealt with the high pressure he was being subjected to by the defendant.

5.3    Plaintiff experienced humiliation for being wrongfully terminated. The job opportunities after his terminated have been drastically reduced, currently is not employed.

5.4    Plaintiffs' private life has been affected, including his relationship with his wife.

5.5    The wrongful and discriminatory termination have caused depression, anxiety as well as his self-esteem has been affected as he can no longer provide for his family as he previously could.

## FIRST CAUSE OF ACTION
## PROHIBITION OF DISCRIMINATION
## FEDERAL LAW

6.1     This cause of action is brought against Sears Roebuck, Inc.

6.2     The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

6.3     The actions of the defendant violate the ADEA, 29 U.S.C. §621 et seq, which prohibits discrimination on the basis of age.

6.4     Plaintiff exhausted all applicable administrative remedies.

6.5     The violations of rights set forth herein entitle plaintiff to relief in the form of compensatory damages, punitive damages, costs, interests, litigation expenses and attorneys fees, as well as equitable relief in the form of back pay and related benefits thereon, and reinstatement or in the alternative, front pay and related benefits thereon.

6.6     Under the ADEA, plaintiff is also entitled to an additional equal amount corresponding to the above monetary items, as liquidated damages.

## SECOND CAUSE OF ACTION
## PRHIBITION OF RETALIATION PURSUANT TO FEDERAL LAW

7.1     This cause of action is brought against Sears Roebuck, Inc.

7.2     The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

7.3     After the plaintiff complained of harassment against him, he was subject to further retaliatory actions, including but not limited to increasing workload and the removal of his molding assistant.

7.4     The violations of rights set forth herein entitle plaintiff to relief in the form of compensatory damages, punitive damages, costs, interests, litigation expenses and attorneys fees,

as well as equitable relief in the form of back pay and related benefits thereon, and reinstatement or in the alternative, front pay and related benefits thereon.

### THIRD CAUSE OF ACTION-
### PUERTO RICO LAW DISCRIMINATION CLAIMS

8.1    This cause of action is brought against Sears Roebuck, Inc.

8.2    The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

8.3    The actions of the defendant constitute a violation of the laws of Puerto Rico in particular, Law 100, which prohibits discrimination in employment on the basis of age, for which the plaintiff is entitled to back pay and related benefits and interest thereon, and compensatory damages, as well equitable relief in the form of back pay and related befits thereon.

8.4    Under the law of Puerto Rico, plaintiff is entitled to a doubling of the aforementioned amounts, and costs, interests and attorneys fees.

### FOURTH CAUSE OF ACTION –TORT ACTION

9.1    This cause of action is brought against the defendant Sears Roebuck, Inc.

9.2    The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

9.3    The actions and omissions of the defendants, through fault and/or negligence, cost damage to the plaintiff, in violation of the tort law of Puerto Rico and his right to dignity and preservation of his reputation, as well as his right to personal dignity and integrity as an employee. All of which violate Article II §§ 1,8 and 16 of The Constitution of the Commonwealth of Puerto Rico, which violations are actionable pursuant to the provisions of Art.

1802 and Art. 1803 of the Civil Code of Puerto Rico, entitling plaintiff to compensatory damages caused as a result of those actions and omissions.

## V. RELIEF

**WHEREFORE**, the plaintiff prays that this court:

1. Enter a Declaratory Judgment that the acts complained of herein are in violation of the statutory prohibitions set forth above.

2. Award the plaintiff the following monetary amounts related to his claims sounding in tort and his discrimination claims:

   a. Back pay and related benefits, currently estimated to be in excess of $100,000.00 and expected to increase in the future.

   b. Compensatory damages in excess of $500,000.00

   c. A doubling of the above amounts, for a total of an additional amount in excess of $600,000.00, which amount is expected to increase in the future.

   d. Punitive damages in an amount no less than $200,000.00.

3. Award the plaintiff whatever equitable relief is deemed appropriate.

4. Award plaintiff the cost of this action, as well as statutory attorneys' fees and litigation expenses.

5. Order payment of all applicable interests, including prejudgment interests.

6. Grant plaintiff such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**A jury by trial is hereby requested.**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 11th day of August of 2015.

*S/ Nicolás Nogueras Cartagena*
USDC No.109712
**NOGUERAS LAW & ASSOCIATES**
PO Box 195386, San Juan, PR 00919-5386
Tel. (787) 296-1958 / Fax: (787) 772-4605
E-mail: *nnogueras@nogueraslaw.com*
