# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IVAN PADIN, et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **SEARS ROEBUCK OF PUERTO RICO, INC. et al.,** <br><br> **Defendants.** | **Civil No. 15-2090 (ADC)** |

## OPINION AND ORDER

Before the Court are defendant Sears Roebuck of Puerto Rico, Inc.'s ("Sears") motion for summary judgment, **ECF No. 83**, plaintiff Iván Padín's ("Padín") response in opposition, **ECF No. 97**, and Sears's reply to plaintiff's response, **ECF No. 103**.

I.  **Factual and Procedural Background**

Padín[1] filed an amended complaint against Sears, Sears Holdings Corporation, and Ramón Jara and the Conjugal Partnership comprised by him and his wife, alleging unlawful discrimination and retaliation in violation of federal and Commonwealth of Puerto Rico laws, including the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* **ECF No.**

---

[1] The amended complaint states that "[n]ow comes the plaintiff, Iván Padín and the Conjugal Partnership Property comprised by him and his wife." **ECF No. 40** at 1. However, under the section entitled "Parties", the complaint only identifies Iván Padín as plaintiff. *Id.* at 3. The complaint does not provide his wife's name, pleads in terms of a singular plaintiff and there is no allegation or cause of action on behalf of plaintiff's wife and or the Conjugal Partnership. In fact, the prayer for relief specifically asks the Court to award "the **plaintiff** the following monetary amounts related to **his** claims sounding in tort and **his** discrimination claims . . . " **ECF No. 40** at 15 (emphasis added). Accordingly, the court finds that Padín is the only plaintiff in this suit.

**40**. Plaintiff also invokes this Court's supplemental jurisdiction for violations of Puerto Rico Law 100 ("Law 100") of June 30, 1959, P.R. Laws Ann., tit. 29, § 146 *et seq.*, and asserts tort claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141, 5142. **ECF No. 40** at 15.

On September 26, 2016, the Court granted defendants' motion to dismiss, **ECF No. 25**, and dismissed: (1) plaintiff's federal retaliation claim, with prejudice, for failing to exhaust administrative remedies; and (2) all claims against Sears Holdings Corporation and Ramón Jara and the Conjugal Partnership comprised by him and his wife, without prejudice, for insufficient service of process. **ECF No. 74**. Furthermore, during a status conference held on May 9, 2016, before U.S. Magistrate Judge Marcos E. López, the parties agreed to dismiss the claims under Puerto Rico's tort statute. **ECF No. 51**; **ECF No. 74** at 11. Thus, plaintiff's only remaining claim is the AEDA claim against Sears.

On October 18, 2016, Sears, the remaining defendant, moved the Court for summary judgment. After requesting three extensions of time to file his response, **ECF Nos. 86, 90, 92**, on December 9, 2016 plaintiff filed an opposition to defendant's motion for summary judgment. **ECF No. 97**. The Court ordered plaintiff's attorney, Nicolás Nogueras-Cartagena, to show cause as to why the Court should not sanction him for his repeated failure to meet with his client and submit a timely response. **ECF No. 96**. Plaintiff's attorney failed to show cause, and the Court imposed an economic sanction on Attorney Nicolás Nogueras-Cartagena for $250. **ECF No. 104**. Finally, with leave from the Court, **ECF No. 102**, Sears replied to plaintiff's opposition to its motion for summary judgment. **ECF No. 103**.

## II. Summary Judgment Standard

A party is entitled to summary judgment "when there is no genuine issue of any material fact on the record and that party is entitled to judgment as a matter of law." *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 56(a). "An issue is genuine if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case." *Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016) (internal quotation marks omitted). Although the Court states the facts in the light most favorable to the party against whom summary judgment is entered, *id.*, the Court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed," *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). "When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." *Pérez-Cordero v. Wal-Mart Puerto Rico*, 440 F.3d 531, 533–34 (1st Cir. 2006) (citing *NEPSK, Inc. v. Houlton*, 283 F.3d 1, 7–8 (1st Cir. 2002)). The Court must still scrutinize the summary judgment motion under the terms of Federal Rule of Civil Procedure but, "[i]n most cases, a party's failure to oppose summary judgment is fatal to its case." *Id.* at 534.

**III.     Preliminary Matters**

Local Civil Rule 56(c) states that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." "The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute. Like Fed. R. Civ. P. 56 itself, the local rule makes clear that its focus is on facts, not speculation or argumentation." *CMI Capital Mkt. Inv., LLC v. González–Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted . . . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts."

The First Circuit Court of Appeals has long held "with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril." *Puerto Rico American Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 131 (1st Cir. 2010); *see also Ruíz-Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000) ("absent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'") (quoting *Stephanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir. 1983)).

Plaintiff's opposition to defendant's statement of uncontested facts does not comply with the Court's anti-ferret rule. First, plaintiff repeatedly disputes facts "as drafted" by arguing that plaintiff omitted other facts that can be found in the same exhibit. For example, defendant claims

that in "Padín's 2007 mid-year review, his supervisor stated that: [Padín] will need to continue to make sure that he holds good to his committed times of meetings and project deadlines.'" **ECF No. 83-1** at ¶ 5. Plaintiff denies this fact "as drafted" and simply adds that "[t]he supervisor's statement cited by Defendant was not the only statement made by the supervisor in the 2007 Mid Year evaluation." **ECF No. 97-1** at ¶ 5. Thus, instead of clearly accepting or disputing the proffered fact with a clear and concise citation to the record, plaintiff simply lists additional statements that the supervisor allegedly made in that same evaluation. These additional facts do not dispute the proffered fact. Moreover, plaintiff should have filed them in a separate opposing statement of facts, as required by Local Civil Rule 56(v). "The plain language of the rule specifically requires that additional facts be put forward in a "separate section." *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 32 (1st Cir. 2010).

Second, plaintiff repeatedly tries to dispute one fact by referring to his challenge to a previous fact. *See, e.g.*, **ECF No. 97-1** at ¶ 9 ("Defendant's Fact 9. [sic.] is denied as drafted. Refer to number 6 above."). In doing so, plaintiff fails to identify the specific record references that dispute the proffered fact or explain how the proffered fact is disputed. Thus, given plaintiff's violation of the court's anti-ferret rule, the Court deems admitted the following facts from defendant's statement of uncontested facts: 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 31.

Third, plaintiff attempts to controvert defendant's statement of facts by citing to exhibits that are not part of the record. For example, plaintiff denies fact 26 by citing to "Defendant's Exhibit 1, plaintiff's deposition p.171 and 174." **ECF No. 97-1**. But, page 171 of the deposition is

not part of the record, and plaintiff has failed to submit a certified translation to the record. Consequently, the Court deems the following facts as admitted: 25, 26, 28, 29, and 32.

Fourth, plaintiff also tries to deny certain facts by citing plaintiff's unsworn statement. **ECF No. 97-2**. But, plaintiff relies on this document without citing or identifying the specific page or paragraph that allegedly denies or controverts the proffered fact. Thus, the Court deems the following facts as admitted: 2, 25.

Finally, plaintiff admits the remaining facts from defendant's statement of uncontested facts—facts 1, 3, 4, 19, 20, 27 and 30. **ECF No. 97-1**. Thus, the Court finds that all of defendant's Statement of Uncontested Facts In Support of Summary Judgment are deemed admitted.

## IV.   Findings of fact.

Plaintiff began his employment with Sears on April 23, 2007, as a District Loss Prevention Manager. **ECF No. 83-1** at ¶¶ 1-2. His duties included the "safety of the unit, internal and external investigations, training and supervision." *Id.* at ¶ 3. "The 'safety area' included responsibility for the over and short policy. Padín had this responsibility since he started with Sears." *Id.* at ¶ 4.[2]

In Padín's 2007 Mid-Year Review , his supervisor stated that Padín "will need to continue to make sure that he holds good to his committed times of meetings and project deadlines." *Id.* at ¶ 5. It was also noted that Padín "must understand that accountability is also measured by responsibility of his own metrics and performance. [He] must prioritize his work and produce

---

[2] Neither party explains the meaning of the term "over and short policy."

quality information." *Id.* at ¶ 6. In the 2007 evaluation, Padín was notified that he had not complied with the "goal of completing eight DA cases." *Id.* at ¶ 7. "DA" cases are terminations due to dishonesty. *Id.* Padín's 2007 evaluation also notified him that he had to "work harder" and "more accurately," and advised him that his "reports have [had] to be consistently revised due to errors in the reporting." *Id.* at ¶¶ 8-9.

In Padín's 2008 Mid-Year Review, Padín's manager noted that Padín "must realize that time spent on building cases will give him his largest return on his investment. [He] needs to spend more time [] learning the business and driving verifiable safety numbers within his district." *Id.* at ¶ 10. 11. The 2008 Mid-Year Review also stated that Padín should participate in "weekly status calls in order to help him achieve measurable goals," and that he needed to enhance "team performance by creating goals and objectives for his staff. [He] has yet to analyze his team's strengths and weaknesses and effectively perform in a manner where it can be measurable and profitable." *Id.* at ¶ 11. Finally, the 2008 Mid-Year Review noted that Padín had already been coached by his supervisor "on multiple occasions on providing accurate . . . data, calendars, metrics" and Padín was told that his performance was "at a level in which [he] needs constant supervision from his supervisor." *Id.* at ¶ 12.

In his 2009 Mid-Year Review, Padín was notified that he needed "to work on the understanding of what levers drive what behaviors and what breakdowns in process effect metrics within the technical metrics." *Id.* at ¶ 13. Padin's 2011 Mid-Year Review observed that Padín was "late getting on calls and he did not complete the no call, no show investigation on time." *Id.* at ¶ 14.

In his 2012 Mid-Year Review, Padín was notified that he "needed to ensure that he drove his execution of his metrics." Metrics included the over and short, and dishonesty cases. Also, Padín was told that he "needed to assess his opportunities and develop action plans to improve his performance." *Id.* at ¶ 15. In Padin's 2012 End of Year Review, Padín was told that he needed to have "three open cases and actively work[] them with case files." *Id.* at ¶ 17.

In 2012, Ramón Jara ("Jara") started to supervise Padín. *Id.* at ¶ 16. Padín did not attend several scheduled conference calls with Jara. Padín admits that on some occasions he did not inform Jara that he was not available. Jara asked Padín to translate "safety and shrink awareness posters" and had to give Padín follow-up in relation to this matter. Jara asked Padín to fulfill said duty and had to give him follow-up so he would do it. *Id.* at ¶ 19.

On October 22, 2013, Padín was placed on a Performance Improvement Plan ("PIP"). *Id.* at ¶ 20. Prior to the PIP, Padín was notified that there were several areas that he should improve. *Id.* at ¶ 21. The PIP provided Padín with the opportunity to improve his performance and informed him that Sears had previously discussed with Padín his performance issues. *Id.* at ¶ 22. The PIP asked Padín to improve in the following areas:

> 1. Be on every team conference call—Actively participate.
> 2. Be on every individual call—Have documentation available prior to the call.
> 3. Respond to RLPD or business partners with 24 hours of any communication or by deadline (via phone or e-mail).
> 4. Create an Action Plan when Padín's LP Metric was below 100%—currently at 90%.
> 5. Complete all necessary KPIs [Key Performance Indicators] monthly—send out KPI recaps within 24 hours of completing the KPI.
> 6. Have three open investigations at all times (Internal Dishonesty). Actively work all three cases. Set deadlines to close out the investigation.

> 7. Conduct three tech audits on lost time weekly—enter results in the lost time website.
> 8. Every 30 days Ivan will review formally the PIP action plan with RLPD to discussed his progress or express any concerns.
> 9. Create a binder where you will store all supporting documentation of your PIP action plan—Example: Your PIP, LP Metric Action Plan, Three Open Investigations, supporting documentation on team and individual calls - status forms. Please use this binder to have all your supporting documentations of your PIP.

*Id.* at ¶ 23.

Padín had to comply with all of the goals established in the PIP. The PIP clearly read that the "company reserves the right to take immediate action up to and including termination if sufficient improvement is not demonstrated." *Id.* at ¶ 24.

Padín cannot identify any pending investigation that he was working when he was placed on the PIP. *Id.* at ¶ 25. In January 2014, Padín only had one investigation open. *Id.* at ¶ 26. In February 2014, Padín had two open investigations. *Id.* at ¶ 27. From October 2013 to April 2014, Padín did not send all of his KPI (Key Performance Indicator) recaps. Prior to the PIP, Padín did not hand in the KPI recaps, as required. *Id.* at ¶ 28. Padín was late in at least one conference call between October 2013 and April 2014. *Id.* at ¶ 29.

Jara terminated Padín on April 23, 2014. *Id.* at ¶¶ 30–31. Jara told Padín that he was terminated due to his performance. *Id.* at ¶ 31. After Padín's termination, no one from Sears has occupied the position of District Loss Prevention Manager. Padín stated that this position was eliminated. *Id.*

## V. Discussion

### A. ADEA Claims.

Sears argues that the Court should dismiss Padín's ADEA claim, with prejudice, because he has failed to establish a prima facie case for age discrimination. **ECF No. 83** at 2. Sears further argues that, even if Padín could establish a prima face case, Sears's had a legitimate, non-discriminatory reason to terminate Padín's employment. *Id.* at 2-3.

Under ADEA, "the plaintiff bears the burden of proving that her age was the 'determinative factor' in her discharge, that is, that she 'would not have been fired but for [her] age.'" *Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc.*, 804 F.3d 127, 129 (1st Cir. 2015) (quoting *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1335 (1st Cir. 1988)). If the plaintiff cannot show direct proof of discrimination—as is the case here—the Court applies "the now-familiar burden-shifting framework of *McDonnell Douglas Corp* . . . ." *Id.* (citing *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir. 1995)) (then citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)).

"Under the *McDonnel Douglas* framework, the plaintiff must first make out a prima facie case for age discrimination." *Id.* If the plaintiff establishes a prima face case:

> there is a rebuttable presumption of discrimination, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for dismissing the employee. If the employer does so, the presumption vanishes and the burden shifts once again. This time, the plaintiff is required to show that the employer's proffered reason is but a pretext, and "that age was the but-for cause of the employer's adverse action.

*Id.* (quoting *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447–48 (1st Cir. 2009)) (citing *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 26 (1st Cir. 1998)).

"[T]he burden of establishing a prima facie case is 'not onerous,' [but] the plaintiff is still required to prove the prima facie elements by a 'preponderance of the evidence.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). A plaintiff can establish a prima facie case of discrimination by showing that "(i) [he] was at least 40; (ii) [his] work was sufficient to meet the employer's legitimate expectations; (iii) [his] employer took adverse action against [him]; and (iv) either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action." *Id.* (citing *Brennan,* 150 F.3d at 26).

Sears does not challenge two of these elements, for Sears took an adverse employment action when it terminated Padín, and Padín was at least 40 years old when Sears terminated him.[3] Instead, Sears presses with the two remaining elements. First, Sears argues that it never hired or named another employee to occupy Padín's position, much less a younger individual. **ECF No. 83** at 2. Second, Sears argues that Padín was not qualified for the position. **ECF No. 83-2** at 8.

It is uncontested that Sears has not hired an employee to replace Padín, who was the last Sears employee to hold the position of District Loss Prevention Manager. **ECF No. 83-1** at ¶ 32. While it was alleged in the complaint that Padín was replaced "for another Area Loss Prevention

---

[3] Although defendant does not emphasize the fact, the Court notes that (1) the amended complaint filed on February 26, 2016, alleges that Padín "is a 41-year old resident of Hatillo, Puerto Rico," **ECF No. 40** at 3; (2) the statement of uncontested facts do not include plaintiff's age; and (3) Padín's unsworn statement states that he was 46 years old when Sears terminated his employment, **ECF No. 97-2** at 1.

Manager of the Florida region Steve Starner who is younger than" Padín , **ECF No. 40** at 12, the complaint does not allege the age of Padín's alleged replacement, and nothing in the record suggests that his alleged replacement is "significantly younger" than him, "so as to permit an inference of age discrimination." *See Del Valle-Santana*, 804 F.3d at 131. Moreover, Padín himself admitted in his deposition that the position was eliminated after he was dismissed. **ECF No. 83-2** at ¶ 32. Accordingly, Padín has failed to establish that a younger individual was retained to occupy his position.

Padín also fails to establish the remaining element for a prima facie case because he has not shown that his work was sufficient to meet Sears's legitimate expectations. Padín had a record of poor performance before Sears placed him in the Performance Improvement Plan, *see* **ECF No. 83-1** at ¶¶ 5-21, and he failed to comply with the plan's goals. Specifically, Padín: (1) did not maintain at least three open investigations at any given time; (2) did not send all of his KPI (Key Performance Indicator) recaps; and (3) was late for at least one conference call while the plan was in place. *See* **ECF No. 83-1** at ¶¶ 25-29. This pattern of miscompliance had been exhibited for a significant period of time.

The Court finds that Padín failed to establish a prima facie case for discrimination. Nonetheless, even if the Court had found that Padín had established a prima facie case for age discrimination, he would not have prevailed in the next steps of the Court's inquiry. Under the *McDonnel Douglas* framework, if the plaintiff establishes a prima face case, "there is a rebuttable presumption of discrimination, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for dismissing the employee." *Del Valle-Santana*, 804 F.3d at 131. Here,

Sears proffers a compelling, legitimate and nondiscriminatory reason for dismissing Padín: his failure to meet employment expectations and standards and his failure to comply with the goals established in the Performance Improvement Plan. **ECF No. 38** at ¶ 24. **ECF No. 83-2** at 9. Sears notified Padín that he was being dismissed because of his performance, and no one replaced him in the position, much less someone "significantly younger" than Padín, "so as to permit an inference of age discrimination." *See id.* (citing *Vélez,* 585 F.3d at 447–48) (citing *Brennan,* 150 F.3d at 26). Thus, Padín cannot show that Sears's proffered reason is "but a pretext and that age was the but-for cause of the employer's adverse action." *Del Valle-Santana*, 804 F.3d at 131 (citations omitted).

Accordingly, the Court **DISMISSES WITH PREJUDICE** Padín's age-discrimination claim against Sears.

**B.     Plaintiff's remaining claims**.

The amended complaint lists only four causes of action: (1) discrimination under ADEA; (2) federal retaliations claims under an unspecified statute; (3) age discrimination under Puerto Rico Law 100; and (4) tort claims under Article 1802 of the Puerto Rico Civil Code. **ECF No. 40** at 13-16. The Court had previously dismissed all but Padín's ADEA claim against Sears.[4]

Nonetheless, Sears's motion for summary judgment points out that "Padín's only remaining claim pending before the Court is age discrimination under the ADEA against Sears."

---

[4] As previously discussed under the Factual and Procedural Background section, when the Court granted defendants' motion to dismiss, **ECF No. 25**, the Court dismissed: (1) the claims under Puerto Rico's tort statute; (2) the federal retaliation claims; all claims under Puerto Rico Law 100; and all claims against Sears Holding Corporation, and Ramón Jara and the Conjugal Partnership between him and his wife. **ECF No. 74** at 11.

**ECF No. 83-2** at 2. Sears then argues that, even though the amended complaint alleges that the Court has federal-question jurisdiction under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, plaintiff has failed to plead any claims under these statutes. **ECF No. 83-2** at n. 3.

Plaintiff's opposition to the motion for summary judgment justifies defendant's wariness of other potential claims. After discussing his objections to the statement of uncontested facts, plaintiff goes on to argue that: (1) Padín's termination was a pretext for discrimination because of his national origin, under Title VII, because he was replaced by "a young-American from Florida," **ECF No. 97** at 16-17, and, (2) that Padín is a qualified individual with a disability under the ADA and that Sears's proffered reason for his termination was a pretext for disability discrimination, **ECF No. 97** at 19-23. However, these allegations appear nowhere in Padín's amended complaint, except in the section addressing the Court's jurisdiction. **ECF No. 40**. In fact, the complaint lists only four causes of action, and none allege or relate to discrimination based on national origin or disability.[5] Finally, plaintiff has not sought leave from the Court to amend his complaint to include and develop these causes of action.

"Although '[a] complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8, its substance and structure must give the defendants notice of the nature of the claim against them . . . ." *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 91 (1st Cir. 2014) (citations omitted). "[T]he pleading standard Rule 8 announces does not require

---

[5] Despite spending five pages addressing his purported claim under the ADA, the Court cannot identify or even infer what is the purported disability to which plaintiff alludes. *See* **ECF No. 97** at 19-23.

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Thus, the Court finds that plaintiff failed to plead any claims under the ADA or Title VII. Moreover, if plaintiff claims that he has met the minimal pleading standards of Federal Rule of Procedure 8 and adequately plead claims under the ADA and Title VII, the Court finds that he has also failed to plead sufficient facts to state a claim under which it could grant relief. *See Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017). Accordingly, the Court would dismiss these claims under Federal Rule of Procedure 12(b)(6).

## IV. Conclusion

In light of the above, the Court **GRANTS** defendant's motion for summary judgment, **ECF No. 83**. The Court hereby **DISMISSES** the complaint, **ECF No. 40**, **WITH PREJUDICE**. Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2017.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**